LOTTINGER, Judge.
This is a suit by Samuel P. Abdalla against Joseph B. Arceneaux, L. Louis Broussard, Arceneaux’s employer, and The Insurance Company of Texas for personal injuries arising out of an automobile accident occurring on December 31, 1954. The Insurance Company of Texas was the liability insurer of defendant Broussard, however, because of insolvency of said insurance company, a stay order was obtained by it which prohibited any further proceedings against the said insurance company. So the only parties defendant now before the Court are Joseph B. Arceneaux and his employer, L. Louis Broussard. The Lower Court awarded judgment in favor of petitioner and against defendants in the amount of $5,139.10. Defendants have appealed asking a reduction in the award and petitioner has answered the appeal asking that the award be increased.
The parties to this action stipulated that the accident in question was caused solely by the negligence of the defendant, Joseph B. Arceneaux, and that at the time of the accident, Arceneaux was within the scope of his employment with defendant, L. Louis Broussard. Therefore, the only question before this Court is one of quantum of personal injuries sustained by petitioner as a result of the accident. Petitioner itemizes his damages as follows: Loss of earnings, $1,700; damages to automobile, $113.75; Dr. James Gilly, $94.50; Lafayette Sanitarium, $95.10; Drs. Miles, Ramagosa and Klinger, $90; future medical expenses, $1,000; pain and suffering, $10,000; permanent injury to right ankle, $15,000; permanent injury to back, $15,000, the total amount claimed being in the amount of $43’,093.35. In his brief filed on this appeal, the petitioner seeks only an increase in award to the sum of $15,139.10. In the brief filed by defendant on appeal, the defendant alleges that the award given by the Lower Court in the amount of $5,139.10 is highly excessive and prays that said award should be materially reduced.
The record discloses that the petitioner had been involved in several accidents both prior and subsequent to the one in question. The dates of the accidents sustained by petitioner were March 4, 1954, December 31, 1954, August 3, 1955, and June 2, 1956. Some personal injury was sustained by petitioner in each of these accidents. The personal damages which are claimed in this suit result from the accident of December 31, 1954.
The record discloses that in the first accident which occurred on March 4, 1954, the petitioner received injuries to his right foot. Dr. Gilly, who treated petitioner for this injury as well as subsequent injuries, testified that he suffered pain in his right ankle and foot which subsequently resulted in neuroma. As a result of this accident, petitioner’s right ankle and foot was in a cast at the time of the second accident which occurred on December 31, 1954. Dr. Gilly testified that, as a result of the injuries sustained in the first accident of March 4, 1954, a neuroma resulted after the second accident which required surgery.
Dr. James Gilly was out of town and did', not see the petitioner until February 11, 1955. However, an associate of Dr. Gilly, Dr. William L. Zink, testified that he first saw petitioner on January 3, 1955, which was three days after the second accident. Dr. Zink testified that X-rays showed “fracture or small avulsion of the tip of the lateral malleleous or bony prominence of the ankle.” The petitioner at that time complained of no further symptoms. After the swelling had gone down, on January 7, 1955, Dr. Zink placed a cast on the foot. Dr. Zink further testified that he further saw petitioner on January 13th, 17th, 28th, and February 4th and 10th, on which occasions petitioner complained of pain in his right ankle. It was not until February 10, 1955, that petitioner made complaints of pain in his upper shoulder and in his right hip. On February 11, 1955, Dr. Gilly returned and Dr. Zink turned the patient over tq Dr. Gilly for further treatment. *253 At that time, according to Dr. Gilly’s testimony, the petitioner complained of the re-injury to his right ankle, and pain in his neck and back. Dr. Gilly testified that as a result of the accident of December 31, 19S4, petitioner sustained a fresh fracture to his right ankle. He further testified that the shoulder complaints were a mild aggravation of pre-existing bursitis, but that the shoulder had returned to normal by March 16, 1955. The back injury was “probably a flexion sprain superimposed upon a lipoma which became acutely painful and tender”, which injury is commonly referred to as a whiplash injury.
Dr. William L. Meuleman, a witness for the defendant, testified that he examined petitioner on one occasion, on April 11, 1956. At that time, there was some swelling of the right ankle joint, and there was no disability to the back. Dr. Meuleman testified that there was a 10 per cent disability of the right ankle, but because of the time which had expired between the injury and his examination, this injury could have been caused by the first accident.
The record discloses that after the second accident the petitioner’s right ankle remained in a cast for a period of five weeks, during which time, as well as for ten days thereafter, the petitioner could get around on crutches. Petitioner testified that he still suffers from his ankle injury, and that his ankle pains him whenever there is a change in the weather or whenever he walks on it for some length of time. He received an operation for neu-roma on September 8, 1955, during which time he was in the hospital for a period of three days and he lost approximately six weeks from work. However, Dr. Gilly testified that the neuroma resulted from the first injury to the foot, and was not caused by the second injury.
As to the accident of August 3, 1955, the petitioner testified that he was shaken up a bit and suffered pain in his leg for a few days. In the third accident, he was riding as a passenger in the front seat, and, as a result of the impact, he was knocked under the dashboard. In the fourth accident of June 2, 1956, petitioner was hit from behind and was jarred up a little bit, according to his testimony.
Because of the numerous accidents sustained by petitioner within a relatively short period of time, it is indeed difficult for us to determine the extent of the injuries caused petitioner in each of the said accidents, and it is much more difficult for us to determine the length of time lost from work by petitioner as a result of each of the accidents. According to the medical testimony, however, it appears that as a result of the accident in question at this time, the petitioner did receive a re-fracture to his right ankle as a result of this second accident. It appears from Dr. Gilly’s testimony that this fracture was not in the same location as the fracture sustained in the first accident. The testimony shows that the neuroma was not a result of the second accident. As a result of the second accident, petitioner further suffered a mild aggravation of pre-existing bursitis, as well as a lipoma, which probably existed prior to the accident in question, but was aggravated by the accident. Both the aggravation of the bursitis, as well as the lipoma, were mild injuries which were successfully treated within a short period of time. Because of the number of accidents, Dr. Gilly was unable to determine that the more recent complaints of petitioner were a result of the second accident.
The record discloses that petitioner is the owner of an automobile repair shop in Lafayette, Louisiana. He is a mechanic and is required to do most of his work while standing. From the record, it appears that as a result of the accident in question he did lose approximately ten weeks time from his work, however, it is difficult to determine the exact period of time lost.
The parties, by stipulation, agreed to medical bills in the total amount of $80. Defendant refused to agree to the bill of Lafayette Sanitarium contending that same *254 was for the neuroma, which did not result from the accident in question. Petitioner failed to prove any further specific damages, as well as any future medical expenses.
The record discloses that petitioner earned approximately $85 per week from his occupation. By supplemental petition, petitioner alleged that he was unable to carry on his occupation for a period of ten weeks subsequent to the accident, and for a further period of ten weeks following the operation for neuroma. It was shown, however, that the neuroma resulted from the first accident, so, according to his own admission, petitioner only lost ten weeks from the accident in question. At $85 per week, the total wages lost by petitioner would be in the sum of $850.
As to the pain and suffering, the record discloses that petitioner’s ankle was in a cast for a period of five weeks, and that he still suffered pain thereto for some period thereafter. However, some of the more recent pain and disability was caused by the neu-roma. The aggravation of the bursitis could have been caused by the accident, but it was relatively minor. The aggravation of the lipoma became acutely painful and tender, but had subsided after treatment on April 6, 1955. We must, furthermore, realize that petitioner did not complain of any pain to his back and shoulder until February 10, 1955, a period of almost a month and a half after the accident.
A review of the record discloses that the award of the Lower Court was excessive. We feel that petitioner is entitled to $2,500 for pain and suffering, $850 for loss of wages, and $80 medical expenses, and the award will be reduced accordingly.
For the reasons assigned, the judgment below will be amended so as to reduce the amount awarded petitioner to the sum of $3,430, and, as amended, the judgment will be affirmed. All costs of this appeal will be assessed to petitioner.
Judgment amended and as amended affirmed.